United States District Court
District of New Jersey

Elizabeth T. Foster, Attorney at Law, LLC
22 E. Quackenbush Ave.
Dumont, NJ 07628
Tel: (201) 290 5761
Fax: (201) 215 9574
Email: liztlaw@gmail.com

Attorney for Plaintiff
-------------------------------------------------------------
Jonathan Reich,
Plaintiff v.
Fairleigh Dickinson University,                    Civ. No. _____
and Security Credit Systems, Inc.
Defendants
-------------------------------------------------------------
Plaintiff, as and for his complaint, states:

Jurisdiction

1.  Jurisdiction is based on federal statutes, 42 USC, Section 1981 and Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Ancillary jurisdiction under 28 U.S.C. § 1367 exists for his other state law claims.

Facts

2.  Plaintiff was enrolled at Fairleigh Dickinson University ("FDU"), a private university in New Jersey, up until the end of 2012.

3.  FDU induced the Plaintiff to enter into a course of study for Jewish students.

4.  The Petrocelli College of Continuing Studies at FDU offers these courses and classes were scheduled to take place at an office building located at 25 Philips Parkway, Montvale, NJ 07645, this building is located about 14 miles away from FDU's main campus.

5.  Plaintiff studied hard, was a good student, and had earned a GPA of 3.88 by the start of 2011. He earned Academic Honors for the Fall Term, 2010 and earned the distinction of being on the Dean's List for the Fall Term, 2011. He previously was enrolled in Yeshiva University.

6.  Plaintiff enrolled in a class in marketing taught by Professor Leon Kurland but for the

whole semester, Kurland only showed up for 2 classes and held 1 or 2 brief teleconferences for the students.

7. Kurland did not generally show up for class, leaving the students without an instructor.

8. Kurland failed to give the two students in the class a final exam, resulting in grades of "incomplete" for both of them.

9. Plaintiff complained about Kurland to the school administration.

10. Plaintiff requested attendance records from FDU several times and for all requests the records were never provided. FDU is responsible for holding back a degree due to their maintenance of the academic record.

11. Long after the semester ended, Kurland gave Plaintiff a special assignment final paper, and gave him a grade of F, claiming Jonathan had plagiarized, which was false.

12. Jonathan has spent the past several years trying to get the grade off his record, and get a refund for the course. The university finally agreed to both, but instead of keeping their promise, they took off the charges but left the grade.

13. Because FDU has been so intractable in addressing this problem, the Plaintiff's efforts to complete his education and to find employment have been stymied.

14. FDU reported Plaintiff to the credit reporting agencies despite its awareness that Plaintiff disputed the debt, causing his credit to be damaged.

15. In an effort to repair Plaintiff's credit and resolve the additional billing by FDU, on July 17, 2016, Plaintiff contacted FDU President Chistopher A. Capuano for an accurate billing invoice to resolve the disputed billing and asking for standard resolution protocol to be used in response to Kurland's false claims.

16. On July 18, 2016, Plaintiff was contacted by David Miles, Director of Public Safety for the Metropolitan Campus of Fairleigh Dickinson University with a perceived threat to contact local law enforcement authorities for reasons unknown.

17. The debt was reported to Security Credit Systems, Inc. ("SCS") and hit plaintiff's credit report.

18. Plaintiff told SCS that he was disputing the FDU debt. SCS had an obligation under FCRA to investigate this disputed information.

19. When Plaintiff advised SCS, a consumer-reporting agency that their file contained

2

inaccurate information, the agency was required to promptly investigate the matter with the source that provided the information.

20. Nevertheless, SCS failed and refused to do this.

Count I--42 USC Section 1981 Discrimination on Account of Being Jewish--As Against FDU

21. FDU holds itself out as providing a Yeshiva type experience for Jewish students with its Yeshiva Program at Petrocelli College.

22. 42 USC § 1981 protects Jewish students who are victims of discrimination; they are considered a protected class.

23. But Petrocelli College is inadequate, with few course offerings, and FDU treats Jewish students worse than other students enrolled at its other campuses.

24. Because Plaintiff is Jewish, he was mistreated and cheated. The Plaintiff was not provided with adequate educational services with respect to Professor Kurland's course and instead of making him whole, FDU punished him by permitting Kurland to read and grade a paper Plaintiff had written.

25. Kurland knew that Plaintiff had complained to the administration that he had not bothered to teach the class in which plaintiff was enrolled and that Plaintiff was dissatisfied with his performance as a professor.

26. Plaintiff asked FDU to arrange for someone else --not Kurland-- to read and grade his paper. However, FDU ignored this request and allowed Kurland to grade the paper, and Kurland accused the Plaintiff of plagiarizing although he did not bother to use Turnitin.com to determine whether the paper --which was properly footnoted and referenced--was plagiarized. Using Turnitin is a standard practice in colleges.

27. On account of Plaintiff's being Jewish, FDU mistreated and harmed Plaintiff as described above. It is intolerable for the school to permit and condone a class to be taught by a professor who can't be bothered to show up for class, give assignments or give grades.

Count II Breach of Contract--As Against FDU

28. FDU contracted with Plaintiff to provide him with proper educational opportunities but instead gave him a substandard opportunity and rather than correct its error, blamed Plaintiff for the error and let Plaintiff down on his legitimate expectations for the contract.

29. FDU and plaintiff had a contract, FDU breached that contract and FDU's conduct

3

resulted in damages for the Plaintiff.

Count III Promissory Estoppel-As Against FDU

30. At Plaintiff's request, FDU agreed to handle the problem in a certain way, removing the incorrect grade and offering to take the course off Plaintiff's bill.

31. However, FDU welched on this promise. It took off the charges from the Plaintiff's bill but refused to remove the failing grade.

32. As a result of FDU's conduct, the Plaintiff has had his career stalled and been unable to move forward with professional studies. This has caused the Plaintiff financial harm and emotional distress.

Count IV Violation of FCRA--As Against FDU

33. FDU wrongfully and willfully reported plaintiff's debt to the credit agencies, despite knowing that the debt was disputed.

34. This caused damage to plaintiff's credit, as well as emotional distress.

35. It is a violation of the FCRA, for a furnisher of credit information, such as FDU, having received a notice of a consumer's potentially meritorious dispute, to subsequently fail to report the claim as disputed.   The law is reprinted below and FDU violated it:

> *§ 1681s-2. Responsibilities of furnishers of information to consumer reporting agencies*
> *(a)  Duty of furnishers of information to provide accurate information.*
> *(1)  Prohibition.*
> *(A)  Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.*
> *(B)  Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer reporting agency if*
> *(i)  the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and*
> *(ii)  the information is, in fact, inaccurate.*
> *(C)  No address requirement. A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.*
> *(D)  Definition. For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.*

4

*(2)  Duty to correct and update information. A person who--*
*(A)  regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and*
*(B)  has furnished to a consumer reporting agency information that the person determines is not complete or accurate,*

   *shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.*

     *(3)  Duty to provide notice of dispute. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.*

36.  As a result of defendant FDU's failure to comply with the FCRA, the plaintiff was damaged:  his credit was damaged and he suffered emotional distress damages as well.

Count V--Violation of FCRA--As Against Security Credit Services

37.  Security Credit Services is a credit reporting agency subject to the FCRA.

38.  Under the FCRA, Credit reporting agencies are obliged to correct or delete inaccurate, incomplete or unverifiable information.

39.  Defendant Security Credit Services failed to do that, despite plaintiff making SCS aware of the disputed claim.

40.  Plaintiff suffered damages in that his credit was damaged and he also suffered emotional distress and punitive damages.  The Fair Credit Reporting Act (FCRA), 15 U.S.C.S. § 1681 et seq., authorizes an award of actual damages or, in lieu thereof, statutory damages of $100 to $1,000 for each willful violation; it also provides for an award of punitive damages. 15 U.S.C.S. § 1681n(a)(1)(A), (a)(2).

Wherefore, Plaintiff demands all damages to which he is entitled by defendants violations and wrongful conduct for their failure to adhere to the statutes cited above and the common law.

Jury Demand

Plaintiff demands a trial by jury

5

<u>Statement of No Other Parties</u>

Plaintiff certifies, by the signature of his undersigned attorney, that he knows of no other parties that should be joined in this action.

Dated:  Sept. 28, 2017                               <u>s/Elizabeth T. Foster</u>
                                                     Attorney for Plaintiff